```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ROSSANA ROSADO, in her official capacity as
NEW YORK STATE SECRETARY OF STATE,
BASIL SEGGOS, in his official capacity as
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and the STATE OF NEW YORK,

                         Plaintiffs,              MEMORANDUM
                                                  AND ORDER
          -against-
                                                  17-CV-4843 (ERK)

E. SCOTT PRUITT, in his official capacity
as Administrator of the United States
Environmental Protection Agency, THE
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and DEBORAH SZARO,
in her official capacity as Acting Regional
Administrator of EPA Region 1,

                         Defendants.
----------------------------------------------------------------x
```

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

On November 30, 2017 and December 21, 2017, respectively, the Connecticut Department of Energy and Environmental Protection (the "DEEP") and the Town of Southold, New York ("Southold") moved to intervene in this action, brought by the New York Secretary of State, the Commissioner of the New York State Department of Environmental Conservation and the State of New York (collectively "New York"), against the United States Environmental Protection Agency (the "EPA") and its Region 1 Acting Administrator, for having allegedly acted arbitrarily and capriciously in designating a disposal site for dredged materials in eastern Long Island Sound (the "Eastern Site"). See Motion to Intervene (Nov.

30, 2017), Electronic Case Filing Docket Entry ("DE") #12; Motion to Intervene (Dec. 21, 2017), DE #14. The original parties do not object to the motions to intervene. For the reasons that follow, the motions to intervene are granted.[1]

## BACKGROUND

"In considering a motion to intervene, the court must accept as true non-conclusory allegations of the motion." SEC v. Callahan, 2 F.Supp.3d 427, 436 (E.D.N.Y. 2014).

On August 17, 2017, New York filed the instant suit, alleging that the EPA's designation of a disposal site for dredged materials in eastern Long Island Sound was arbitrary and capricious and in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706, the Ocean Dumping Act, 33 U.S.C. § 1401 *et seq.*, and the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq.* See Complaint (Aug. 17, 2017), DE #1. New York filed an Amended Complaint on October 11, 2017. See Amended Complaint (Oct. 11, 2017) ("Am. Compl."), DE #9. On November 21, 2017, the Honorable Edward R. Korman, the District Judge to whom this case is assigned, approved the parties' proposed schedule for briefing anticipated dispositive motions. See Order (Nov. 21, 2017); Consent Motion (Oct. 25, 2017), DE #11.

The Ocean Dumping Act regulates the disposal of dredged materials into ocean waters. See 33 U.S.C. § 1401(b). The Act's protections extend to the Long Island Sound. See Am.

---

[1] The granting of a motion to intervene is not dispositive of the merits and, accordingly, is within the pretrial reference authority of the undersigned magistrate judge. See Lopez v. Bell Sports, Inc., No. 14-cv-2530 (SJF)(SIL), 2014 WL 6473533, at 1 n.1 (E.D.N.Y. Nov. 18, 2014); Arista Records, Inc. v. Dalaba Color Copy Ctr., Inc., No. 05-CV-3634 (DLI)(MDG), 2007 WL 749737, at *1 (E.D.N.Y. Mar. 7, 2007); United States v. Certain Real Prop. & Premises Known as 1344 Ridge Road, 751 F.Supp. 1060, 1061 (E.D.N.Y. 1989).

Compl. ¶ 4. Any federal projects involving dredging or dumping into the Sound, and any private entities seeking to dredge projects greater than 25,000 cubic yards within the Sound, must comply with the Ocean Dumping Act. See id. In order to manage the risks of environmental harm, disposal subject to the Ocean Dumping Act is allowed only by permit issued by the Army Corps of Engineers. See id. ¶ 7. Open water disposal of dredged material may be conducted at a permanent site designated by the EPA or a short-term "alternative" site selected by the Army Corps of Engineers and approved by the EPA. See id.

In a final rule dated December 6, 2016, the EPA designated as a permanent disposal site the Eastern Site, located south of the mouth of the Thames River at New London, Connecticut, with its boundary extending to within 0.2 nautical miles of the New York boundary. See id. ¶ 10. New York alleges that it will be harmed by the designation and use of the Eastern Site. See id. ¶ 12. Contaminants excavated primarily from tidal river areas and bays along Connecticut's coast will be relocated to the Eastern Site, located in a previously unused area of the Sound closer to New York's boundary. See id. Mobilization through dredging and placement of contaminants on the floor of the Long Island Sound at the Eastern Site will create the potential for the introduction of those contaminants into the food chain and transfer them to New York waters. See id. New York further alleges that use of the Eastern Site creates the risk of interference with the safety, logistics and flow of interstate ferry traffic between New York and New England via the Cross Sound Ferry, which travels between Orient Point, New York and New London, Connecticut, and crosses the Eastern Site. Id.

The DEEP supports the EPA's designation and seeks to intervene as a defendant,

asserting that hundreds of marine and water-dependent businesses in Connecticut rely on periodic dredging. See Affidavit Brian P. Thompson (Aug. 30, 2017) ¶ 8, DE #12-2. For example, submarine manufacturer Electric Boat, the U.S. Navy Submarine Base and numerous marinas and commercial fishing businesses depend upon access to navigational channels that must be maintained by dredging. See id. ¶ 9. As a result, the availability of economical, environmentally sounds methods of disposing of dredged material is necessary to support Connecticut's water-dependent businesses and uses. See id. A reduction of disposal sites for dredged material in Connecticut's coastal waters would create significant adverse impacts on Connecticut's economy and would not significantly reduce adverse environmental impacts. See id. ¶ 10.

Southold, a town on the eastern end of Long Island that is surrounded by the marine waters of the Long Island Sound, opposes the EPA's designation and seeks to intervene as a plaintiff. See Affidavit of Mark Terry (Dec. 21, 2017) ¶¶ 6, 8, 9, DE #14-4. Five islands are located within the municipal jurisdiction of Southold, four of which are located within the Long Island Sound, and one of which, Fishers Island, is 1.4 nautical miles from the Eastern Site. See id. ¶¶ 10, 13, 18. The Southold Town Code regulates and limits dredging and the disposal of dredged material within the coastal areas of the Town. See id. ¶¶ 41, 44, 51. Since 2004, Southold has never granted a dredging permit allowing an applicant to deposit dredged material in New York State waters within the boundaries of Long Island Sound. See id. ¶ 71. According to Southold, the Eastern Site is subject to Southold's local waterfront revitalization program, which is inconsistent with the EPA's designation of the Eastern Site. See id. ¶¶ 137-139. Southold contends that use of the Eastern Site will cause ecological and

economic harm from the dumping of dredge spoils in the area.  See id. ¶ 18.

## **DISCUSSION**

The DEEP and Southold seek to intervene as of right or by permission – DEEP as a defendant and Southold as a plaintiff.

In order to be granted intervention as of right, a proposed intervenor must: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000) (citing Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)); see Fed. R. Civ. P. 24(a)(2).[2]  The burden on proposed intervenors in showing inadequate representation is "minimal," requiring only that they demonstrate "that representation of their interests 'may be' inadequate[.]"  Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application."  Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts., 847 F.2d 1038, 1043 (2d Cir. 1988) (emphasis in original) (citing United States v. New York, 820 F.2d 554, 556 (2d Cir. 1987)); accord In re Holocaust Victim, 225 F.3d at 197-98.

"Permissive intervention is wholly discretionary with the trial court[,]" USPS v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978), whose discretion is so very broad that reversal of

---

2 Rule 24(a) of the Federal Rules of Civil Procedure provides that: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

a district court's "denial of permissive intervention is a very rare bird indeed,"[3] United States v. Pitney Bowes, 25 F.3d 66, 73 (2d Cir. 1994); see Washington Elec. Co-op, Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990); Brennan, 579 F.2d at 192. Permissive intervention may be granted only "if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" In re Holocaust Victim, 225 F.3d at 202 (quoting Fed. R. Civ. P. 24(b)(2)). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" Pitney Bowes, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(2)); see In re Holocaust Victim, 225 F.3d at 202; Brennan, 579 F.2d at 191.

Although Connecticut and Southold likely satisfy the requirements for intervention as of right, the Court need not address the relevant factors because it is appropriate to grant their requests for permissive intervention. Both motions were filed before the EPA responded to the amended complaint, and only a couple of months after plaintiffs filed their amended pleading. To date, no conferences have been held in the case. Thus, the parties will not be prejudiced by any delay. Underscoring the absence of prejudice, the existing parties do not object to DEEP's and Southold's intervention.

There are obviously common questions of fact and law between DEEP's defense of the EPA's designation of the Eastern Site and Southold's and New York's challenges to the same.

---

3 Rule 24(b) states: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

Both DEEP and Southold have direct, substantial and legally protectable interests in the designation of the Eastern Site. Contaminants caused by the disposal of dredged materials could harm the Town's water resources. In contrast, the absence of a disposal site could affect the continued operation of Connecticut's ports and harbors, and the businesses that rely on access to them. Both proposed intervenors must be given an opportunity to protect their interests in this action, which may not be completely aligned with the interests of the corresponding party.

## CONCLUSION

Accordingly, the motions of DEEP and Southold to intervene are granted.

**SO ORDERED.**

**Dated: Brooklyn, New York**
   **January 2, 2018**

/s/     *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**